1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ESPERANZA MENDEZ C.,[1]            ) Case No. CV 19-4015-JPR
                                   )
                Plaintiff,         )
                                   ) **MEMORANDUM DECISION AND ORDER**
        v.                         )
                                   )
ANDREW SAUL, Commissioner          )
of Social Security,                )
                                   )
                Defendant.         )
_____)

**I.    PROCEEDINGS**

        Plaintiff seeks review of the Commissioner's final decision
denying her application for Social Security Disability Insurance
Benefits ("DIB").  The matter is before the Court on the parties'
Joint Stipulation, filed February 4, 2020, which the Court has
taken under submission without oral argument.  For the reasons
stated below, the Commissioner's decision is affirmed.

_____

        [1] Plaintiff's name is partially redacted in line with
Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.

1

## II.   BACKGROUND

Plaintiff was born in 1956.[2]   (Administrative Record ("AR") 59.)   She attended school in Mexico through age 16 (AR 482) and has worked as an "electronic assembler," "electronic inspector," and "electronic tester" (AR 68-69).   She applied for DIB on May 5, 2011, alleging that she had been unable to work since May 15, 2009, because of carpal tunnel syndrome, "anxiety disorder," "high blood pressure," and "panic attacks."   (AR 143, 160, 164.) After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge.   (AR 100.)   A hearing was held on May 13, 2013, at which Plaintiff, represented by counsel, testified, as did a vocational expert.   (AR 56.)   In a written decision dated May 24, 2013, the ALJ found her not disabled.   (AR 29-38.)   Plaintiff requested review from the Appeals Council (AR 20), but it denied her request (AR 1).

Plaintiff appealed (AR 523-25), and on April 26, 2016, the Court reversed and remanded for further administrative proceedings (AR 532-41).   On December 4, 2017, the ALJ conducted another hearing, at which Plaintiff, who was again represented by counsel, and a VE again testified.   (AR 475.)   At that hearing, Plaintiff's attorney amended the alleged onset date "to coincide with the date of the application filing of May 2011."[3]   (AR 479.)

_____

[2] Plaintiff's DIB application states that she was born in 1955 (AR 143), but she testified at a hearing that she was born in 1956 (AR 59).

[3] Counsel most likely did so because, as the ALJ noted in her first decision, Plaintiff stopped working in 2009 because she
(continued...)

2

1  In a written decision dated February 21, 2018, the ALJ again

2  found Plaintiff not disabled.  (AR 468; <u>see</u> AR 457-68.)  The

3  Appeals Council considered Plaintiff's written objections to the

4  ALJ's decision and found no reason to assume jurisdiction.  (AR

5  435.)  This action followed.

6  **III.  STANDARD OF REVIEW**

7      Under 42 U.S.C. § 405(g), a district court may review the

8  Commissioner's decision to deny benefits.  The ALJ's findings and

9  decision should be upheld if they are free of legal error and

10  supported by substantial evidence based on the record as a whole.

11  <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Parra v.</u>

12  <u>Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence

13  means such evidence as a reasonable person might accept as

14  adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at 401;

15  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

16  is "more than a mere scintilla but less than a preponderance."

17  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec.</u>

18  <u>Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  "[W]hatever the

19  meaning of 'substantial' in other contexts, the threshold for

20  such evidentiary sufficiency is not high."  <u>Biestek v. Berryhill</u>,

21  139 S. Ct. 1148, 1154 (2019).  To determine whether substantial

22  evidence supports a finding, the reviewing court "must review the

23  administrative record as a whole, weighing both the evidence that

24  supports and the evidence that detracts from the Commissioner's

25

26

27  [3] (...continued)
    was laid off and thereafter collected two years of unemployment
    insurance, "represent[ing] that she was capable[] of performing
28  work had it become available."  (AR 36.)

1 conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.
2 1998).  "If the evidence can reasonably support either affirming
3 or reversing," the reviewing court "may not substitute its
4 judgment" for the Commissioner's.  <u>Id.</u> at 720-21.

5 **IV.  THE EVALUATION OF DISABILITY**

6     People are "disabled" for Social Security purposes if they
7 are unable to engage in any substantial gainful activity owing to
8 a physical or mental impairment that is expected to result in
9 death or has lasted, or is expected to last, for a continuous
10 period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>
11 <u>v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

12     A.   <u>The Five-Step Evaluation Process</u>

13     The ALJ follows a five-step sequential evaluation process in
14 assessing whether a claimant is disabled.  20 C.F.R.
15 § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
16 Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the
17 Commissioner must determine whether the claimant is currently
18 engaged in substantial gainful activity; if so, the claimant is
19 not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

20     If the claimant is not engaged in substantial gainful
21 activity, the second step requires the Commissioner to determine
22 whether the claimant has a "severe" impairment or combination of
23 impairments significantly limiting her ability to do basic work
24 activities; if not, a finding of not disabled is made and the
25 claim must be denied.  § 404.1520(a)(4)(ii) & (c).

26     If the claimant has a "severe" impairment or combination of
27 impairments, the third step requires the Commissioner to
28 determine whether the impairment or combination of impairments

1  meets or equals an impairment in the Listing of Impairments

2  ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix

3  1; if so, disability is conclusively presumed and benefits are

4  awarded.  § 404.1520(a)(4)(iii) & (d).

5      If the claimant's impairment or combination of impairments

6  does not meet or equal an impairment in the Listing, the fourth

7  step requires the Commissioner to determine whether the claimant

8  has sufficient residual functional capacity ("RFC")[4] to perform

9  her past work; if so, the claimant is not disabled and the claim

10  must be denied.  § 404.1520(a)(4)(iv).  The claimant has the

11  burden of proving she is unable to perform past relevant work.

12  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a

13  prima facie case of disability is established.  Id.

14      If that happens or if the claimant has no past relevant

15  work, the Commissioner then bears the burden of establishing that

16  the claimant is not disabled because she can perform other

17  substantial gainful work available in the national economy, the

18  fifth and final step of the sequential analysis.

19  §§ 404.1520(a)(4)(v), 404.1560(b).

20      B.   The ALJ's Application of the Five-Step Process

21      At step one, the ALJ found that Plaintiff had not engaged in

22  substantial gainful activity since May 5, 2011, the alleged onset

23  date.  (AR 459.)  Her date last insured ("DLI") was December 31,

24

25      [4] RFC is what a claimant can do despite existing exertional
26  and nonexertional limitations.  § 404.1545(a)(1); see Cooper v.
   Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  The
27  Commissioner assesses the claimant's RFC between steps three and
   four.  Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017)
28  (citing § 416.920(a)(4)).

1  2014. (Id.) At step two, she determined that Plaintiff had the

2  severe impairments of "overuse syndrome[,] bilateral upper

3  extremities"; anemia; and "degenerative changes [of the] lumbar,

4  thoracic, and cervical spine." (Id.) At step three she

5  concluded that her impairments did not meet or equal a Listing.

6  (AR 464.) At step four, she found that she had the RFC to

7  perform "light work" with some additional limitations: she could

8  perform "frequent (not constant) gross and fine manipulation" and

9  could have "no concentrated exposure to extreme heat and cold" or

10 "vibrating tools." (Id.) She could perform her past relevant

11 work as generally performed. (AR 467.) Accordingly, she found

12 her not disabled. (Id.)

13 **V.    DISCUSSION**[5]

14     A.   Relevant Background

15        1.   Medical opinions and evidence

16 Plaintiff saw Dr. Donald F. Chen[6] on April 12, 2010,

17 complaining of "[p]ain in [her] hands [and] joints" and "things

18

19 ───────────────

20 [5] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme
   Court held that ALJs of the Securities and Exchange Commission
21 are "Officers of the United States" and thus subject to the
   Appointments Clause. To the extent Lucia applies to Social
22 Security ALJs, Plaintiff has forfeited the issue by failing to
   raise it during her administrative proceedings. (See AR 445-50,
23 479-89); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as
   amended) (plaintiff forfeits issues not raised before ALJ or
24 Appeals Council); see also Kabani & Co. v. SEC, 733 F. App'x 918,
   919 (9th Cir. 2018) (rejecting Lucia challenge because plaintiff
25 did not raise it during administrative proceedings), cert.
   denied, 139 S. Ct. 2013 (2019).
26

27 [6] Dr. Chen primarily practices family medicine. See Cal.
   Dep't Consumer Aff. License Search, https://search.dca.ca.gov
28 (search for "Donald" and "Chen") (last visited Aug. 5, 2020).

6

1  fall[ing] off of [her] hands easily."  (AR 227.)  Dr. Chen

2  diagnosed "carpal tunnel syndrome" and "depression" and

3  prescribed Tylenol, Paxil,[7] and an assistive brace.  (Id.)

4  During a May 13, 2010 office visit, she complained of "[p]ain in

5  [her] hands [and] feet, more [at] night"; depression; and an

6  "anxiety attack while driving."  (AR 221.)  Dr. Chen made a note

7  to rule out osteoporosis, diagnosed "depression/anxiety," noted

8  her medications as atenolol[8] and Paxil, prescribed Xanax[9] and

9  Tylenol, and ordered a bone-density test.  (Id.)  She saw Dr.

10  Chen again on June 25, 2010, complaining of "[p]ain in bones all

11  over body" and "[a]nxiety."  (AR 226.)  He diagnosed

12  "osteoporosis" and "carpal tunnel syndrome" and prescribed Xanax,

13  Os-Cal,[10] and Fosamax.[11]  (Id.)  On August 27, 2010, she saw Dr.

---

15  [7] Paxil is name-brand paroxetine, which is used to treat
16  depression and generalized anxiety disorder, among other mental
   issues.  See Paroxetine, MedlinePlus, http://www.nlm.nih.gov/
17  medlineplus/druginfo/meds/a698032.html (last updated Sept. 15,
   2018).

19  [8] Atenolol is used to treat high blood pressure.  See
   Atenolol, WebMD, https://www.webmd.com/drugs/2/drug-11035/
20  atenolol-oral/details (last visited Aug. 5, 2020).

21  [9] Xanax is name-brand alprazolam, a benzodiazepine used to
   treat anxiety and panic disorders.  See Xanax, WebMD, https://
22  www.webmd.com/drugs/2/drug-9824/xanax-oral/details (last visited
   Aug. 5, 2020).

24  [10] Os-Cal is name-brand calcium carbonate, which is used to
   prevent or treat low blood calcium levels.  See Os-Cal Tablet,
25  WebMD, https://www.webmd.com/drugs/2/drug-9388/os-cal-oral/
   details (last visited Aug. 5, 2020).

27  [11] Fosamax is name-brand alendronate, which is used to
   prevent and treat certain types of bone loss and osteoporosis.
28  See Fosamax Tablet, WebMD, https://www.webmd.com/drugs/2/
                                              (continued...)

Chen for back pain that ran "to her [right] leg," "pressure on her [right] eye," depression, and "pain on [sic] her hands."  (AR 220.)  He diagnosed "depression/anxiety" and osteoporosis and prescribed Paxil, Xanax, Motrin, Os-Cal, and Fosamax.  (<u>Id.</u>)

On May 3, 2011, two days before the alleged onset date (AR 459, 479), Plaintiff complained of "pain in forearms," "depression," and "anxiety when travel[ing] farther than 10 miles away from home" (AR 219).  Dr. Chen again noted "carpal tunnel syndrome" and "depression" and prescribed ibuprofen, Paxil, and Xanax.  (<u>Id.</u>)

Plaintiff saw Richard D. Scheinberg, an orthopedic surgeon, for a comprehensive orthopedic evaluation on June 7, 2011.  (AR 295-97.)  The examination revealed a "positive Tinel sign[12] in the right and left wrists over the median nerve."  (AR 296.)  Jamar dynamometer grip-strength test results were 25, 30, and 30 in the right (dominant) hand and 15, 15, and 15 in the left hand.[13]  (<u>Id.</u>)  Dr. Scheinberg diagnosed Plaintiff with

---

[11] (...continued) drug-1273-7174/fosamax-oral/alendronate-oral/details (last visited Aug. 5, 2020).

[12] Tinel's sign is positive when tapping the front of the wrist produces tingling of the hand.  <u>See</u> <u>Carpal Tunnel Syndrome</u>, Medicine Net, https://www.medicinenet.com/carpal_tunnel_syndrome/article.htm (last visited Aug. 5, 2020).

[13] The record does not indicate whether the measurements were in pounds or kilograms.  A "normal" grip strength for a woman between 55 and 59 years old is between 17.7 and 31.5 kilograms, or between 39.02 and 69.45 pounds.  <u>See</u> <u>Grip Strength Ratings for Females</u>, Topendsports, https://www.topendsports.com/testing/norms/handgrip.htm (last visited Aug. 5, 2020); <u>Convert Kilograms to Pounds</u>, Calculateme, https://www.calculateme.com/ (continued...)

"[o]veruse, both upper extremities, rule out carpal tunnel syndrome." (Id.) He noted that he had agreed to take over as her primary treating physician. (AR 297.) He opined that she was "TTD," or temporarily totally disabled, "from her usual and customary occupation and should avoid any gripping, grasping, or prolonged fine manipulative work such as data entry or technical work with her hands." (Id.) He noted that he would provide her with bilateral wrist splints and medications for inflammation. (Id.)

Internist Ursula Taylor performed an internal-medicine evaluation of Plaintiff on July 14, 2011, at Defendant's request. (AR 284-88.) Plaintiff drove herself to the evaluation and reported hypertension, back pain, and joint pain. (AR 284.) On examination, she had "excellent range of motion of the lumbar spine," a negative straight-leg-raising test, "no obvious joint findings," no "obvious wrist, hand, or elbow findings," "[n]o obvious significant muscle atrophy," and "good motor strength and good grip strength." (AR 287.) Specifically, her grip strength was 40 pounds in the right hand and 35 pounds in the left hand. (AR 285.) Dr. Taylor opined that she "should avoid extremes in temperature" but assessed "no restrictions" on lifting and carrying, hand use, or fine fingering manipulation, among other things. (AR 288.)

Plaintiff saw Dr. Scheinberg again on July 21, 2011, for "9/10 bilateral wrist/hand pain, left, greater than right,

[13] (...continued)
weight/kilograms/to-pounds/ (last visited Aug. 5, 2020).

involving [an] increased area of the arms . . . with more weakness." (AR 293.) She inquired about getting "medications" because "the pain is very severe." (Id.) He noted a positive Tinel's sign at her elbow, slightly reduced grip strength in her right hand, and "[o]therwise unchanged" findings. (Id.) Dr. Scheinberg noted that his findings were "disproportionate" and "must be objectified." (AR 294.) He prescribed Anaprox[14] and Ultram[15] and found her TTD for four weeks. (Id.) On September 1, 2011, Plaintiff complained of bilateral wrist and hand pain but stated that her medications helped. (AR 353.) Dr. Scheinberg diagnosed "[u]pper extremity neurologic findings, objectify" and "[o]veruse bilateral upper extremities" and noted that he would proceed with an EMG, or electromyography, and an NCV, or nerve conduction velocity test, "of the bilateral upper extremities." (Id.) He found her TTD for six weeks. (Id.) Both the EMG and the NCV were normal. (AR 355, 358.)

Plaintiff reported to Dr. Scheinberg on October 13, 2011, that she continued to have "9/10 bilateral wrist/hand pain, 'now involving much more area of the arms.'" (AR 350.) She asked for a "stronger medication for when the pain is very severe." (Id.)

---

[14] Anaprox is name-brand naproxen sodium, a nonsteroidal anti-inflammatory drug used to treat pain and swelling. See Anaprox, WebMD, https://www.webmd.com/drugs/2/drug-10989/ anaprox-oral/details (last visited Aug. 5, 2020).

[15] Ultram is name-brand tramadol, an opioid pain reliever. See Ultram, WebMD, https://www.webmd.com/drugs/2/drug-11276/ ultram-oral/details (last visited Aug. 5, 2020).

She exhibited "[p]ositive Tinel's/Phalen's[16] bilaterally" and had "[d]iminished sensation [in] median nerve distribution." (Id.) Dr. Scheinberg noted the "unremarkable" EMG and NCV results and recommended that Plaintiff undergo physical therapy of the "bilateral upper extremities" "[three] times per week for [four] weeks" for "strengthening and work hardening." (AR 351.) He noted that her "[m]edication regime facilitates [a] heightened level of function with [an] increase in tolerance to exercises" and daily activities. (Id.) He counseled her on "addiction" and "opiate induced hyperalgia." (Id.) He prescribed hydrocodone[17] to use "sparingly" and Ultracet.[18] (Id.) He found her TTD for four weeks. (AR 352.)

On November 10, 2011, Dr. Scheinberg noted that Plaintiff's "[t]opical analgesic decrease[d] neuropathic pain [in the] upper extremities [by five] points on a scale of 10." (AR 347.) He found "Tinel's/Phalen's positive bilaterally" and "[d]iminished sensation in median nerve distribution"; Plaintiff "remain[ed] deconditioned." (Id.) He again recommended physical therapy for

---

[16] Phalen's sign is positive when bending the wrist downward produces tingling of the hand. See Carpal Tunnel Syndrome, Medicine Net, https://www.medicinenet.com/carpal_tunnel_syndrome/article.htm (last visited Aug. 5, 2020). Positive Tinel's and Phalen's signs are markers of carpal tunnel syndrome. See id.

[17] Hydrocodone is an opioid used to relieve moderate to severe pain. See Hydrocodone-Acetaminophen, WebMD, https://www.webmd.com/drugs/2/drug-251/hydrocodone-acetaminophen-oral/details (last visited Aug. 5, 2020).

[18] Ultracet is an opioid used to treat moderate to moderately severe pain and contains tramadol and acetaminophen. See Ultracet, WebMD, https://www.webmd.com/drugs/2/drug-21825/ultracet-oral/details (last visited Aug. 5, 2020).

the "bilateral wrists/hands" "[two] times per week for [four] weeks." (Id.)  He also encouraged an "[e]mphasis on active therapy . . . including stretching, strengthening, [and] work hardening." (Id.)  He found her TTD for four more weeks. (AR 349.)  He noted on December 8, 2011, that Plaintiff exhibited "[p]ositive Tinel's/Phalen's" and that a Jamar test of her grip strength was "markedly limited" in the "bilateral wrists/hands," with "no greater than 10 pounds on [three] attempts." (AR 374.) But Plaintiff's "[c]urrent medication . . . decrease[d] pain and facilitate[d] increased activity." (Id.)  Plaintiff reported that a "[t]opical analgesic decrease[d] localized pain [in her] bilateral wrists/hands as well as neuropathic pain." (Id.)  She had "increased tolerance to a variety of activity." (Id.)  He extended his finding that she was TTD by four weeks. (AR 376.) This was the last such extension in the record.

On May 2, 2012, Plaintiff reported to Dr. Chen that she "continue[d] to have . . . pain in hands." (AR 380.)  He prescribed Vicodin.[19]  (Id.)  She apparently did not complain of or receive treatment for her hands for the next year.

On June 4, 2013, Plaintiff saw Dr. Peter Kamal Soliman[20] for "arm pain," "depression/anxiety," and "neck pain." (AR 642.)  He

---

[19] Vicodin is an opioid pain reliever used to relieve moderate to severe pain.  See Vicodin, WebMD, https://www.webmd.com/drugs/2/drug-3459/vicodin-oral/details (last visited Aug. 5, 2020).

[20] Dr. Soliman primarily practices family medicine.  See Cal. Dep't Consumer Aff. License Search, https://search.dca.ca.gov (search for "Peter" and "Soliman") (last visited Aug. 5, 2020).

opined that her pain was "[l]ikely fibromyaglia [sic] due to depression" and adjusted her medication. (AR 644-45.) Plaintiff again complained of "musculoskeletal pain" on July 3, 2013. (AR 651.) Dr. Soliman found "tenderness . . . on the left side and left neck" and advised her to take ibuprofen. (AR 652.) On July 23, 2013, she saw Dr. Soliman for "musculoskeletal pain" and to "follow up on depression and . . . anxiety." (AR 654.) He noted "tenderness on [the] back of [the] neck and arms" and otherwise normal physical-examination findings. (AR 655.) He increased her Zoloft[21] prescription and prescribed tramadol. (Id.)

On August 27, 2013, Plaintiff saw Dr. Soliman for a follow-up visit for her anxiety and was "doing better." (AR 664.) On November 13, 2013, she reported to Dr. Soliman that her pain was "0/10." (AR 1003.)

Plaintiff saw Shamsuddin Hooda, a certified physician's assistant, on February 3, 2014, for "anxiety, hypertension, hyperlipidemia (follow up) and anemia." (AR 996.) She reported that her anxiety and depression were "well controlled"[22] and that she was "doing well." (Id.) She denied joint pain. (Id.) The

---

[21] Zoloft treats depression, panic attacks, and anxiety disorder. See Zoloft, WebMD, https://www.webmd.com/drugs/2/drug-35-8095/zoloft-oral/sertraline-oral/details (last visited Aug. 5, 2020).

[22] By contrast, she had "severe" mental-health scores during a June 17, 2011 psychological evaluation by William W. Kaiser, a psychologist and qualified medical examiner. (See AR 255-78.) Dr. Kaiser noted, however, that those scores "indicated a technically invalid [personality] profile" and "could reflect . . . a lack of cooperation[] and/or an exaggeration of symptoms as a cry for help and/or as a purposeful manipulation for secondary gain (malingering)." (AR 263.)

physical examination was normal, and Hooda adjusted her
medication and ordered blood work.  (AR 998.)  On March 10, 2014,
she denied "[b]ack pain, joint pain, joint swelling, muscle
weakness and neck pain."  (AR 976.)  She had "no complaints" at
an office visit on March 24, 2014.  (AR 970.)  On May 6, 2014,
she complained to Dr. Soliman of "musculoskeletal pain" and
"nocturnal awakening and weakness."  (AR 966.)  She described her
pain level as "6/10."  (AR 967.)  He referred her to physical
therapy, instructed her to continue taking ibuprofen, and
prescribed Flexeril.[23]  (AR 967-68.)  She complained of dizziness
on August 11, 2014.  (AR 957.)  But she denied neck stiffness or
weakness (AR 959), and the musculoskeletal examination was normal
(AR 960).

On September 17, 2014, she saw Dr. Soliman for "[b]ilateral
[h]and [p]ain" and reported that she was going "to Mexico to a
chiropractor" because it was "cheap there."  (AR 952.)  She
requested tramadol.  (Id.)  Dr. Soliman noted "bilateral hand
tenderness" and referred her to a chiropractor.  (AR 955.)

On June 4, 2015, over five months after the date last
insured (AR 459), electrodiagnostic studies revealed left "mild"
carpal tunnel syndrome and right "moderate" carpal tunnel
syndrome, with no evidence of cubital tunnel syndrome (AR 1224).
She had normal muscle strength and full range of motion in both
hands.  (Id.)  Plaintiff initially declined surgery, indicating
that she was "doing better with respect to the carpal tunnel

---

[23] Flexeril is a muscle relaxant used to treat muscle
spasms.  Flexeril Tablet, WebMD, https://www.webmd.com/drugs/2/
drug-11372/flexeril-oral/details (last visited Aug. 5, 2020).

1  symptoms." (Id.) Ultimately, however, she underwent right

2  carpal-tunnel-release surgery nearly two years after the DLI, on

3  August 18, 2016. (AR 1642-43.)

4          2.   The ALJ's decision

5      The ALJ credited the opinions of consultative examiner Dr.

6  Taylor and state-agency reviewing physicians H.M. Estrin[24] and

7  George N. Lockie[25] because of "the supportability of the medical

8  signs and laboratory findings," "the consistency with the record

9  showing only conservative treatment," and evidence that Plaintiff

10 "reported that her medications were effective in alleviating her

11 pain." (AR 466.)

12     The ALJ discounted Dr. Scheinberg's opinions because the TTD

13 assessment was not determinative of whether Plaintiff was

14 disabled for Social Security purposes; his finding of TTD was

15 premised on her not being able to perform her actual job, whereas

16 disability under Social Security requires being unable to engage

17 in any substantial gainful activity at all; his opinions

18 reflected only temporary limitations and did not indicate whether

19 the restrictions were expected to last at least 12 months, as

20 required for Social Security disability; most of his opinions

21 were rendered before the electrodiagnostic studies; and his

22

23     [24] Dr. Estrin primarily practices internal medicine. See
   Cal. Dep't Consumer Aff. License Search, https://
24 search.dca.ca.gov (search for "H" and "Estrin") (last visited
   Aug. 5, 2020).
25

26     [25] Dr. Lockie primarily practices pediatrics. (See AR 302-
   03 (showing specialty code of 32)); Soc. Sec. Admin., Program
27 Operations Manual System (POMS) DI 24501.004 (May 5, 2015),
   https://secure.ssa.gov/apps10/poms.nsf/lnx/0424501004 (specialty
28 code 32 indicates pediatrics).

recommendation that Plaintiff maximize exercise of her hands was inconsistent with the inability to perform any type of activity with them.  (AR 466-67.)

B.   <u>Analysis</u>

Plaintiff contends that this Court "should reverse" the Commissioner's decision because the ALJ improperly weighed the opinion evidence.  (J. Stip. at 11.)  Specifically, she argues that the ALJ improperly rejected the opinions of Dr. Scheinberg, her treating physician for six months (<u>id.</u> at 10), who opined that Plaintiff was temporarily totally disabled "from her usual and customary occupation and should avoid any gripping, grasping, or prolonged fine manipulative work such as data entry or technical work with her hands" (AR 297).  For the reasons discussed below, remand is not warranted.

1.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  <u>Id.</u>; <u>see</u> § 404.1527(c)(1)-(2).[26]  This is so because treating

---

[26] For claims filed on or after March 27, 2017, the rules in § 404.1520c (not § 404.1527) apply.  <u>See</u> § 404.1520c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017).  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary
(continued...)

physicians are employed to cure and have a greater opportunity to know and observe the claimant. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). But even "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (as amended).

The ALJ may discount a physician's opinion regardless of whether it is contradicted. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989); <u>see also</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008). When a doctor's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for a "clear and convincing" reason. <u>Magallanes</u>, 881 F.2d at 751 (citations omitted); <u>Carmickle</u>, 533 F.3d at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31). When it is contradicted, the ALJ need provide only a "specific and legitimate" reason for discounting it. <u>Carmickle</u>, 533 F.3d at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31). The weight given a doctor's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. <u>See</u> § 404.1527(c); <u>see also</u> <u>Orn v. Astrue</u>, 495

---

[26] (...continued) weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." § 404.1520c(a). Thus, the new regulations eliminate the term "treating source" as well as what is customarily known as the treating-source or treating-physician rule. <u>See</u> § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and the Court therefore analyzes it under the treating-source rule in § 404.1527.

F.3d 625, 631 (9th Cir. 2007) (factors in assessing physician's opinion include length of treatment relationship, frequency of examination, and nature and extent of treatment relationship).

        2.    The ALJ permissibly discounted Dr. Scheinberg's
              opinions

        Because Dr. Scheinberg's opinions were inconsistent with the opinions of the consulting examiner and state-agency reviewing doctors, the ALJ needed to provide only a "specific and legitimate reason" for discounting them, Carmickle, 533 F.3d at 1164 (citation omitted), and she did so.

        To start, the ALJ accurately noted that a finding of disability for purposes of workers' compensation is not determinative of whether Plaintiff was disabled for Social Security purposes.  (AR 466); see Allen v. Comm'r of Soc. Sec., 498 F. App'x 696, 698 (9th Cir. 2012) (finding that ALJ did not err in failing to consider California workers'-compensation ratings assessed by doctor because "[t]he California Guidelines for Work Capacity are not conclusive in a Social Security case" and "[t]he ALJ considered [the doctor's] entire report, not just the portion containing the workers' compensation ratings"). Although discounting medical opinions solely because they were given in the context of a workers'-compensation claim is error, see Sinohui v. Astrue, No. EDCV 10-908 RNB., 2011 WL 1042333, at *2 (C.D. Cal. Mar. 18, 2011); Booth v. Barnhart, 181 F. Supp 2d 1099, 1105 (C.D. Cal. 2002), this was not the sole reason the ALJ

gave for discounting Dr. Scheinberg's opinions.[27]

The ALJ properly discounted them because they did not meet the Social Security disability duration requirement. "Unless [the] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." § 404.1509. Here, Dr. Scheinberg first opined on June 7, 2011, that Plaintiff was TTD. (AR 297.) He extended that finding several times by four or six weeks (AR 349, 352, 353), with the final extension of four weeks on December 8, 2011 (AR 376). Even combining all of Dr. Scheinberg's TTD findings, they do not meet the duration requirement. And no other doctor opined that Plaintiff was ever TTD. This is a specific, legitimate reason to discount the opinions. See Bales v. Astrue, No. 1:09-cv-2243 SKO., 2011 WL 923571, at *13 (E.D. Cal. Mar. 14, 2011) (finding that ALJ did not err in discounting medical opinion for failure to meet duration requirement because there were "gaps during the many extensions of time which Plaintiff was expected to be disabled").

Plaintiff argues that the ALJ should have evaluated whether she was entitled to a closed period of disability. (J. Stip. at 8.) As Defendant points out (id. at 16 n.2), she has forfeited this issue by not raising it during her administrative

---

[27] Plaintiff complains that the ALJ erroneously rejected Dr. Scheinberg's opinions for the related reason that TTD "is an opinion regarding total incapacity or inability to earn any income during recovery from injury," not just as to the person's current job, as the ALJ seemed to believe. (J. Stip. at 19; see AR 466-67.) But Dr. Scheinberg himself limited his TTD finding only to work in Plaintiff's "usual and customary occupation." (AR 297.) The ALJ did not err.

19

proceedings.  See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that claimants who are represented by counsel must raise all issues and evidence during their administrative proceedings to preserve them for appeal). Moreover, Plaintiff bears the burden of showing entitlement to any period of disability, and she never argued for a closed period.  See Armstrong v. Comm'r Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) (holding that ALJ's duty to assist in determining disability onset date when record is ambiguous does not relieve claimants of ultimate burden to prove disability before DLI).  Like the plaintiff in Meanel, Plaintiff was represented by counsel at the hearing and before the Appeals Council.  (AR 435, 475.)  Presumably her attorney was aware that Dr. Scheinberg's opinions regarding TTD were of limited total duration.[28]  The issue is forfeited.

Furthermore, the ALJ properly discounted Dr. Scheinberg's opinions because most of them were rendered before and were inconsistent with the September 13, 2011 electrodiagnostic studies.  (AR 354-59.)  An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is

_____

[28] Sims v. Apfel, 530 U.S. 103, 107 (2000), cited by Plaintiff (J. Stip. at 21), does not help her because it held only that an issue is not forfeited if it wasn't presented to the Appeals Council, noting that "[w]hether a claimant must exhaust issues before the ALJ is not before us."  Here Plaintiff did neither.  See Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) (as amended Feb. 28, 2018) (upholding and applying Meanel after Sims); see also Phillips v. Colvin, 593 F. App'x 683, 684 (9th Cir. 2015) ("This issue was waived by [claimant]'s failure to raise it at the administrative level when he was represented by counsel, and [he] has not demonstrated manifest injustice excusing the failure.").

brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted); see Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion.").

Dr. Scheinberg's initial opinions that Plaintiff "should avoid any gripping, grasping, or prolonged fine manipulative work" (AR 297) were rendered without the benefit of the September 13, 2011 EMG and NCV, which were normal (AR 354-59). Specifically, the EMG report stated that there were "no findings to suggest the presence of an active or chronic denervation of the bilateral cervical myotomes" or "a motor radiculopathy in any of the nerve roots." (AR 355.) The NCV report noted that there were "no electrodiagnostic findings to suggest the presence of a mononeuropathy, peripheral neuropathy, or briachial plexopathy." (AR 358.)

As the ALJ noted (AR 467), following those normal clinical findings, Dr. Scheinberg recommended that Plaintiff "maximize activity/exercise with [the] goal of hastened improvement [of the] hand[s]." (AR 348.) Although he continued to find her TTD, the ALJ properly found that "[t]he direction to maximize activity [was] inconsistent with an opinion that the [Plaintiff was] unable to perform any type of activity with her hands." (AR 467.) Plaintiff argues that Dr. Scheinberg never stated that she was unable to perform "any" activity with her hands and that the

direction to maximize activity was not inconsistent with his

prior opinions because he restricted only "prolonged"

manipulative work and did not "necessarily forbid" gripping and

grasping.  (J. Stip. at 9-10.)  Although Plaintiff is correct

that Dr. Scheinberg's opinions restricted only "prolonged" fine

manipulative work, the recommendation to avoid gripping and

grasping was not so limited.  (AR 297.)  Indeed, Plaintiff's

counsel interpreted it at the first hearing as "no gripping or

grasping."  (AR 70.)  The ALJ properly found, therefore, that the

direction to maximize activity was inconsistent with that

restriction and rejected it.

     The ALJ also properly credited the contrary opinions of Drs.

Estrin, Lockie, and Taylor.  Dr. Taylor performed an independent

evaluation of Plaintiff on July 14, 2011.  (AR 284-88.)  She

examined her and found "no obvious joint findings," no "obvious

wrist, hand, or elbow findings," "[n]o obvious significant muscle

atrophy," and "good motor strength and good grip strength."  (AR

287.)  Specifically, the grip-strength results, "measured by

Jamar dynamometer," were 40 pounds in the right hand and 35

pounds in the left, essentially normal.[29]  (AR 285.)  "The range

of motion of all extremities appear[ed] normal" (AR 286), and the

"upper and lower extremity movements were noted to be normal

_____

     [29] As noted, a "normal" grip strength for a woman between 55
and 59 years old is between 17.7 and 31.5 kilograms, or between
39.02 and 69.45 pounds.  See Grip Strength Ratings for Females,
Topendsports, https://www.topendsports.com/testing/norms/
handgrip.htm (last visited Aug. 5, 2020); Convert Kilograms to
Pounds, Calculateme, https://www.calculateme.com/weight/
kilograms/to-pounds/ (last visited Aug. 5, 2020).

1   . . . [with] no evidence of incoordination" (AR 287).  Dr. Taylor

2   assessed "no restrictions" on lifting and carrying, hand use, or

3   fine fingering manipulation.  (AR 288.)

4        Drs. Estrin and Lockie reviewed Plaintiff's medical records,

5   including Dr. Taylor's records.  (AR 79, 302, 305.)  Dr. Estrin

6   found her not disabled and opined that she was capable of

7   performing her past relevant work as generally performed in the

8   national economy.  (AR 82, 84.)  Dr. Lockie generally agreed with

9   Dr. Taylor's assessment but also opined that "handling" and

10  "fingering" should be "limited to frequent."  (AR 300.)

11       Plaintiff, citing Orn, 495 F.3d at 625, argues that the

12  opinions of these nontreating physicians do not rise to the level

13  of substantial evidence because they are not based on

14  "independent clinical findings."  (J. Stip. at 17.)  Plaintiff

15  correctly notes that "independent clinical findings" are either

16  "diagnoses that differ from those offered by another physician

17  and that are supported by substantial evidence . . . or findings

18  based on objective medical tests that the treating physician has

19  not herself considered."  Orn, 495 F.3d at 632.  Although none of

20  the nontreating physicians here relied on diagnoses that differed

21  from Dr. Scheinberg's, Dr. Taylor relied on her own objective

22  medical tests, including the grip-strength test.  (AR 285.)  Drs.

23  Estrin (AR 79) and Lockie (AR 302, 305) also relied on Dr.

24  Taylor's objective medical tests.  Those opinions, therefore,

25  constituted substantial evidence contradicting the opinions of

26  Dr. Scheinberg.  See Orn, 495 F.3d at 632.

27       Because the ALJ properly credited those opinions (AR 466),

28  she was entitled to discount Dr. Scheinberg's inconsistent ones

23

1   accordingly.  Remand is not warranted.

2   **VI.   CONCLUSION**

3       Consistent with the foregoing and under sentence four of 42

4   U.S.C. § 405(g),[30] IT IS ORDERED that judgment be entered

5   AFFIRMING the Commissioner's decision, DENYING Plaintiff's

6   request for remand, and DISMISSING this action with prejudice.

7

8   DATED:  August 6,2020          *Jean Rosenbluth*

9                                  JEAN ROSENBLUTH
                                   U.S. MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27       [30] That sentence provides: "The [district] court shall have
    power to enter, upon the pleadings and transcript of the record,
28   a judgment affirming, modifying, or reversing the decision of the
    Commissioner of Social Security, with or without remanding the
    cause for a rehearing."